UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 3:18-cr-0022-8(VLB) |
| | : | |
| **MALCOLM NEWTON** | : | |
| Defendant. | : | November 18, 2020 |
| | : | |
| | : | |
| | : | |
| | : | |

### MEMORANDUM OF DECISION DENYING DEFENDANT MALCOLM NEWTON'S MOTION FOR A REDUCTION OF SENTENCE, [Dkt. 891]

Before the Court is Defendant Malcolm Newton's motion for a reduction of his sentence to provide for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkts. 891, 897]. Defendant seeks a modification of his sentence from incarceration to home confinement based on his asserted risk of severe complications should he contract COVID-19 while incarcerated at FCI Danbury. [*Id.*]. The Government opposes Defendant's motion. [Dkts. 901]. For reasons set forth below, the Court DENIES Defendant's motion.

### Background

Mr. Newton was one of nineteen defendants arrested following an FBI investigation into a crack cocaine trafficking operation in a residential area in New Haven, Connecticut. [Dkt. 462 (Pre-Sentence Investigation Report) ¶¶ 7-

1

19](hereinafter PSR).[1] Mr. Newton pled guilty to one count of Conspiracy to Distribute, and to Possess with Intent to Distribute, cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). [Dkt. 378 (Order adopting Findings and Recommendations of Judge Richardson on plea)]. The Government argued that Mr. Newton was a mid-level dealer. [Dkt. 634 (Sent. Hearing Tr.) at 06:1-06:17]. His unlawful activities in furtherance of the conspiracy resulted in an attributed drug quantity corresponding to a guideline calculation of at least 28, but less than 112 grams of cocaine base. [PSR ¶¶19, 25]. Additionally, police recovered at least one firearm during the execution of a search warrant on Defendant's home, which Mr. Newton admitted that he possessed in furtherance of his drug trafficking activities. [PSR ¶¶ 19, 26]. This resulted in a two-level enhancement pursuant to USSG § 2D1.1(b)(1). [*Id.*]. Considering the three-level reduction for acceptance of responsibility, Defendant's total offense level was 23. [PSR ¶ 34]

Mr. Newton has two prior state convictions, both serious and recent. In late 2013, Mr. Newton was sentenced to 3 years' jail time, one year to serve, for "No Pistol Permit". [PSR ¶ 38]. Connecticut Department of Corrections records show that Mr. Newton was transferred to transitional supervision on July 16, 2015. [*Id.*]. Mr. Newton escaped transitional supervision and was separately convicted and sentenced to additional jail time for that offense. [PSR ¶39]. Mr. Newton committed the instant offense while he was subject to a conditional discharge for his state

---

[1] At sentencing, the Court confirmed that Defendant read the PSR. Defendant did not have any objections to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact, as modified to reflect two spelling changes. [Dkt. 634 (Sent. Hearing Tr.) at 04:03-05:11].

firearm offense, resulting in two additional criminal history points pursuant to USSG § 4A1.1(d). [PSR ¶ 40]. Mr. Newton had six criminal history points, which placed him in category III. [PSR ¶¶ 41]. The offense carried a mandatory minimum term of five years' incarceration pursuant to 21 U.S.C. § 841(b)(1)(B). Consequently, Mr. Newton's advisory guideline range was 60-71-months of imprisonment. [PSR ¶ 59].

Taking all of the 18 U.S.C. § 3553(a) sentencing factors into account, the Court sentenced Mr. Newton to a guideline sentence of 66 months of imprisonment, with a four-year term of supervised release to follow. [Dkt. 475 (Crim. J.)].

A review of the Bureau of Prison's ("BOP") Inmate Locator confirms that Mr. Newton is designated to FCI Danbury, a low security prison within the District. *See Inmate Locator Service, BOP Registration no. 25727-014*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/, (Nov. 17, 2020); *see Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search). His current release date is December 23, 2022. *Id.*

By letter dated July 28, 2020, counsel for Mr. Newton requested that the warden of FCI Danbury and the Director of the BOP file a motion for compassionate release on his behalf. [Dkt. 891-2, Ex. B. (07/28/2020 Admin. Request for Compassionate Release)]. The letter argues that Mr. Newton's asthma and obesity place him at heightened risk of severe complications should he contract COVID-

3

19, which constitutes "extraordinary and compelling" reasons to modify his sentence. [*Id.*].

Warden Easter denied Mr. Newton's request on August 11, 2020. [Dkt. 891-2, Ex. B. (07/28/2020 Request for Comp. Release)]. Warden Easter's response states "[a] review of your current medical record confirms your diagnosis of asthma and a prescribed inhaler, however you are not diagnosed with moderate to severe asthma. Within the last year you have been 79% compliant with your inhaler. Your asthma is being well managed at FCI Danbury, and you have demonstrated the ability to manage your self-carry medication." [*Id.*]. Warden Easter acknowledged that the U.S. Centers for Disease Control and Prevention ("CDC") recognizes obesity as a risk factor for severe coronavirus infection and Mr. Newton's last BMI measurement of 30.4 [kg/m2] technically classified him as obese. [*Id.*]. However, Warden Easter denied Mr. Newton's request because he has "no other factors which place [him] at higher risk of complications for COVID-19. [Mr. Newton's] medical needs are currently being well managed by FCI Danbury. In addition, on May 26, 2020 [Mr. Newton] tested negative for COVID-19."

In response to the Court's order requesting clarification about a statement in defense counsel's supplemental brief concerning Mr. Newton's COVID status, defense counsel clarified that Mr. Newton has not tested positive for coronavirus. [Dkt. 946]. Defense counsel also filed additional medical records showing that Mr. Newton had an elevated bilirubin level, that he sought follow up treatment for intermittent chest pain, and that he had an additional EKG, which showed minimal changes. [Dkt. 948-1 (Sealed Med. R.)].

## Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Addressing the specific provision under which Defendant seeks relief from his sentence, the First Step Act of 2018 amended the procedural requirements for bringing a motion for resentencing to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020). The First Step Act amendments were intended to address past inaction by the BOP by removing the BOP as the sole

arbiter of compassionate release, while still permitting the BOP to weigh-in on a defendant's request via the statute's exhaustion of administrative remedies requirement. See *id.* at 232; *see also United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *3 (D. Conn. Apr. 23, 2020)(explaining the policy purpose behind the exhaustion requirement in this context).

Recently, in *Brooker*, the Second Circuit held that since the BOP no longer has exclusive authority to bring a motion for compassionate release, district courts have the discretion to determine what constitutes "extraordinary and compelling" circumstances outside of the outdated U.S. Sentencing Commission policy statements when the defendant moves for compassionate release. 976 F. 3d at 234-36. In short, the statute only requires courts to consider "applicable" statements issued by the U.S. Sentencing Commission and the relevant policy statement, U.S.S.G. § 1B1.13, is no longer "applicable" because the policy statement refers exclusively to a motion brought by the Director of the BOP. *Id.* at 235-36. In other words, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." *Id.* at 236. Therefore, courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement. *Id.* at 237.

Consequently, the Court may grant a Defendant's motion for compassionate release if: (1) the Defendant has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) the Court finds

that, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As to what constitutes "extraordinary and compelling" circumstances, this Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. United States v. Jepsen*, 451 F. Supp. 3d 242, 245-47 (D. Conn. 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system and defendant had less than eight weeks remaining on sentence); *United States v. Miller*, No. 3:15-CR-132-2 (VLB), 2020 WL 3187348, at *5 (D. Conn. June 15, 2020)(granting motion for compassionate release for severely ill defendant with less than three months remaining on sentence).

Courts considering defendants' medical vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations. *See United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539, at *4-5 (D. Conn. June 15, 2020); *see also, e.g.*, *United States v. Adams*, No. 3:16-CR-86-VLB, 2020 WL 3026458, at *2 (D. Conn. June 4, 2020); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020). In determining whether a defendant's medical vulnerability to the virus constitutes "extraordinary and compelling" reasons for re-sentencing, courts have considered a multitude of factors in factually intensive inquiries, including: defendants' age, the severity and documented history of their health conditions, defendants' history of managing

7

those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served. *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)(citations omitted).

A motion for compassionate release is not an appropriate safety valve to ameliorate the immediate risk to inmates' health and safety posed by the pandemic. Congress empowered the BOP with the ability to expand the use of home confinement pursuant to 18 U.S.C. § 3624(c)(2). CARES Act, Pub. L. No. 116-136 (2020). The BOP is also empowered to grant temporary furloughs. 18 U.S.C. § 3622. In contrast, if granted by the sentencing court, a motion for compassionate release results in a new judgment, with a now-reduced stated term of incarceration. *See, e.g. Jepsen,* 3:19-cr-00073-VLB-1, Dkt. 42 (amended criminal judgment following order granting unopposed motion for compassionate release).

## Discussion

I. <u>Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)</u>

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a defendant must either "…fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."(underlining added).

Mr. Newton, through counsel, filed the instant motion on September 8, 2020, after the submission of his administrative request to Warden Easter on July 28,

2020. Since over thirty days passed between his request for administrative relief and the filing of his motion for compassionate release, it is properly before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A).

II. **Whether Mr. Newton establishes "extraordinary and compelling" reasons to reduce his sentence.**

Mr. Newton argues that, notwithstanding his young age, he has a heightened risk of severe illness if he contracts COVID-19 because of his asthma and obesity, both individually and in combination. [Dkt. 891 at 9-11]. Mr. Newton argues that the time he has already served is enough to satisfy the purposes of sentencing in light of the risk to his health from coronavirus. [*Id.* at 12]. He has remained discipline free at FCI Danbury and he engaged in available programming, including a drug education program. [*Id.*]. He proposes to reside with his mother and enroll in online courses while subject to home confinement. [*Id.* at 12-13].

In opposition, the Government argues that Mr. Newton, who is 26, has a prior firearms conviction and a conviction for escape, is not a suitable candidate for release. [Dkt. 901 (Gov. Mem. in Opp'n) at 11-12]. The Government agrees that Mr. Newton's BMI, between 30-31 kg/m², classifies him as obese and therefore he is at a heightened risk of severe complications should he contract COVID-19 based on the applicable CDC criteria, which constitutes a sufficient basis for compassionate release. [*Id.* at 13]. Instead, the Government argues that even if Mr. Newton establishes "extraordinary and compelling" reasons to modify his sentence, a sentence of home confinement would not comport with the purposes of sentencing. [*Id.* at 13-15]. The Government argues that Mr. Newton has a troubling

9

criminal history and reengaged in criminal activity promptly upon his release from custody after he received additional jail time for escaping transitional custody and while subject to a conditional discharge. [*Id.* at 14]. The Government also cites the fact that Mr. Newton possessed at least one firearm in furtherance of his drug trafficking activities as further evidence of Defendant's dangerousness. [*Id.*].

The Court begins with the general premise that individuals held in jails and prisons are more likely than the general public to contract COVID-19. At present, the BOP reports that over 18,000 inmates have recovered from the virus and just over 3,000 remain positive nationwide. *See* Fed. Bureau of Prisons, *BOP COVID-19 Cases* (Table), https://www.bop.gov/coronavirus/index.jsp, (last reviewed 11/17/2020). Without accounting for decreases in the BOP's population, 15% of prisoners in BOP custody have or have had COVID-19. *Id.* By comparison, the Connecticut Department of Public Health has reported approximately 95,000 COVID-19 cases, so with a population of approximately 3.565 million people, about 2.6% of the state's population is or has been infected by coronavirus. Conn. Dep't. of Pub. Health, *Coronavirus Disease 2019 (COVID-19)*, https://portal.ct.gov/coronavirus (last reviewed on 11/17/2020); Conn. Dep't. Pub. Health, *Annual Town and County Population for Connecticut-2018*, https://portal.ct.gov/DPH/Health-Information-Systems--Reporting/Population/Annual-Town-and-County-Population-for-Connecticut).[2] The Court is of the view that the increased likelihood of contracting COVID-19 in a

---

[2] The Court recognizes that these statistics are imperfect as reporting methodologies among different government agencies vary. They are cited for illustrative purposes.

custodial setting generally does not itself constitute "extraordinary and compelling reasons" for compassionate release. With this backdrop, the Court has closely reviewed the most recent CDC guidance identifying persons at risk of severe complications if they contract COVID-19, along with Mr. Newton's medical records, conditions at FCI Danbury where he has been incarcerated, and his personal characteristics.

For the last several months, the CDC has classified underlying health conditions that correlate to an increased risk of severe complications from contracting COVID-19 into two categories; conditions that are known to cause an increased risk of severe illness and those that might increase a person's risk. *People with certain medical conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Nov. 02, 2020). The conditions listed are regularly updated as the CDC reviews new scientific research. Obesity, defined as having a BMI greater than 30 kg/m$^2$, is among the conditions that the CDC recognizes as increasing a person's risk of severe illness from coronavirus. *Id*. The custodial records establish that Mr. Newton is obese, with a BMI between 30-31 kg/m$^2$. [Dkt. 899 (Sealed Med. R.) at (06/24/2020 med note listing height as 76 inches, weight as 255 lbs.)]; [*Id*. at 7 (07/29/2020 med note listing weight as 250]. Mr. Newton's medical conditions list demonstrates that the BOP considers both obesity and asthma as among Mr. Newton's current medical conditions. [*Id*. at 12]. The Court acknowledges that Mr. Newton's obesity, which is marginal, places him at a heightened risk of severe complications were he to contract the virus.

The CDC considers asthma a condition that *might* create a heightened risk of severe complications from the virus. *People with certain medical conditions*, Ctrs. for Disease Control and Prevention. As Warden Easter noted, Mr. Newton was not diagnosed with moderate or severe asthma and his condition appears well managed, with regular treatment, medication, and follow ups. Defendant does not present any additional medical evidence to explain how clinical findings - concerning his EKG and elevated bilirubin are medically attributable to a condition that the CDC recognizes as elevating a person's risk of complications from the virus.

Additionally, the Defendant is 26 years old. In the macabre realm of mortality statistics, less than 1% of all fatal COVID-19 cases occurred among individuals younger than 35. *Provisional Death Counts for Coronavirus Disease 2019 (COVID-19): Weekly Updates by Select Demographic and Geographic Characteristics*, Ctrs. for Disease Control and Prevention, Table 1, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (last updated Nov. 12, 2020). Defendant has not cited any authoritative sources explaining how marginal obesity significantly increases the risk of severe illness or death among persons specific to Defendant's age demographic. See [Dkt. 891-1 (Def. Mem in Supp.) at 9](citing Marie McCullough, *People with obesity are at high risk for severe COVID-19*, Philadelphia Inquirer, https://www.inquirer.com/health/coronavirus/how-obesity-makes-covid-19-worse-20200828.html, (Aug. 28, 2020)(citing a study of COVID-19 patients under age 60 who were hospitalized in New York City found that a BMI over 35 almost quadrupled

the chance of needing critical care.); also citing *Coronavirus: Obesity "increases risks from Covid-19,"* BBC News (Aug, 26, 2020), https://www.bbc.com/news/health-53921141 (no age-specific discussion).

Conditions at FCI Danbury appear well controlled. At present, there are only two active cases among inmates at FCI Danbury. *See* Fed. Bureau of Prisons, *BOP COVID-19 Cases* (Table), https://www.bop.gov/coronavirus/index.jsp, (last updated 11/18/2020). Considering a "full slate" of reasons for compassionate release, the Court agrees with Warden Easter that Mr. Newton's obesity and controlled asthma does not established "extraordinary and compelling" reasons for his release, particularly in view of the comprehensive health care that he is receiving, his age, and the state of the virus at FCI Danbury. *See also, United States v. Goldberg*, No. 13-CR-120 (JMA), 2020 WL 6273947, at *3 (E.D.N.Y. Oct. 26, 2020)(denying compassionate release for a offender with a BMI of 40.1 and citing examples of other courts denying compassionate release to offenders with obesity).

Even if the Court were to conclude that Mr. Newton carried his burden of establishing "extraordinary and compelling" reasons for release, consideration of the 18 U.S.C. § 3553(a) sentencing factors would mitigate against modification of his sentence.

### III. § 3553(a) sentencing factors

Because the Court concludes that Mr. Newton did not carry his burden of establishing "extraordinary and compelling" reasons to modify his sentence, the Court will only briefly discuss why the § 3553(a) sentencing factors further militate

13

against granting Mr. Newton's motion for compassionate release. The Court's balancing of the § 3553(a) sentencing factors remains unchanged since sentencing.

First, the sentence in this matter reflected the need to deter Mr. Newton from committing further crimes and the need to promote respect for the law. Mr. Newton previously fled custody and committed the instant offense shortly after his release from custody and while subject to a conditional discharge.

Moreover, his proclivity towards the illegal possession of firearms poses a danger to the public. Mr. Newton has over two years remaining on his 66-month sentence. Mr. Newton's crime of conviction carried a 60-month mandatory minimum term of incarceration pursuant to 21 U.S.C. § 841(b)(1)(B). A sentence of time served, particularly to the degree sought here, would promote an unwarranted sentencing disparity among similarly situated defendants, including several of his co-defendants who were also subject to mandatory minimum sentences.

Consequently, considering the Defendant's personal characteristics, including the custodial environment under pandemic conditions, a sentence of time served would not promote respect for the law, provide just punishment for his offense or protect the public, would exacerbate sentencing disparities, and would not adequately deter Mr. Newton from returning to criminal conduct.

## Conclusion

For the above stated reasons, the Court DENIES Mr. Newton's motion for compassionate release without prejudice to renewal if the material facts in support

of Mr. Newton's motion change, i.e. conditions at FCI Danbury deteriorate, Mr. Newton's personal health status changes, or new scientific information from authoritative sources emerges.

                                                IT IS SO ORDERED.

                                                _____/s/_____
                                                Hon. Vanessa L. Bryant
                                                United States District Judge

**Dated this day in Hartford, Connecticut: November 18, 2020**